**ST. LOUIS–SAN FRANCISCO RAILWAY COMPANY, a Corporation, Plaintiff in Error,**

**v.**

**Elmo E. McBRIDE, Defendant in Error.**

No. 38918.

Supreme Court of Oklahoma.

Sept. 26, 1961.

As Amended March 13, 1962.

Rehearing Denied March 13, 1962.

Application for Leave to File Second Petition for Rehearing Denied Nov. 28, 1962.

James L. Homire, St. Louis, Mo., Rupert Fogg, El Reno, Franklin & Harmon, Oklahoma City, for plaintiff in error.

Rinehart, Rinehart & Rinehart, El Reno, Ratner, Mattox & Ratner, Wichita, Kan., for defendant in error.

BLACKBIRD, Vice Chief Justice.

On May 9, 1956, defendant in error, a switchman for plaintiff in error, slipped off one of its boxcar's steel ladders, while the car was moving in the Tulsa railroad yards, and injured his left arm and wrist. After being treated for the injuries he returned to his regular job on July 3rd, 1956.

As plaintiff, he thereafter, in October of that year, instituted the present action under the Act of Congress of March 2, 1893 (27 Stat. 531), commonly known as the Safety Appliance Act, 45 U.S.C.A. § 1 et seq., to recover damages, on account of said injury, against plaintiff in error, as defendant. The recovery he sought was for " * * * loss of earnings, past and future pain and suffering, embarrassment and humiliation, past and future, in the amount of $50,000.00."

The parties will hereinafter be referred to as they appeared in the trial court.

After one mistrial, and a trial nullified by a subsequent order for a new trial, the cause came on for its latest trial in April, 1959. There it was established that plaintiff's fall occurred after the switching crew, of which he was a member, had, in the process of moving several other freight cars from track No. 22 (on which they had been left in the Tulsa yards) to "rip" or "repair" track No. 3, for repairs, received orders to move a boxcar standing on track No. 12. The last car in the string of cars, the switching engine was pushing at the time the coupling with a Frisco boxcar (already standing on the rip track) was attempted, was a "T. N. & O." car from the end of which plaintiff was signaling directions, for the switching operations, to the engineer several cars behind. As the switching train approached the Frisco boxcar, plaintiff jumped off the T. N. & O. car and ran along the right side of the track, between it and the Frisco car, until the two cars came together. When the train collided with the Frisco car, the T. N. & O.

car's coupler did not engage or couple with the Frisco car's coupler, and the latter started rolling. In an effort to stop it, plaintiff ran across the track between the two cars, and started ascending the steel ladder on the left side of the Frisco car to reach its roof, in order to set its brakes. It was then that he slipped off the rungs of the car's ladder and fell to the ground on his left arm, suffering the alleged injury.

One of the principal questions at the trial, and here, is whether or not the failure of the two cars to couple evidenced a violation by defendant of section 2 of the Safety Appliance Act, supra, 45 U.S.C.A. § 2, which reads as follows:

"It shall be unlawful for any common carrier engaged in interstate commerce by railroad to haul or permit to be hauled or *used on its line* any car used in moving interstate traffic not equipped with couplers *coupling automatically by impact,* or which can be uncoupled without the necessity of men going between the ends of the cars." (Emphasis ours.)

Among the instructions which defendant, at the close of the evidence, requested the court to give the jury, was one directing a verdict for it. After the court's refusal to give such an instruction, submission of the cause to the jury resulted in a verdict for plaintiff in the sum of $21,000.00; and judgment was entered accordingly. After its motion for a new trial was overruled, defendant perfected the present appeal.

██ ██ Under the first two propositions defendant urges for reversal it contends that the trial court erred in its refusal to grant defendant's request for a directed verdict, because of the absence of proof of defendant's violation of the Safety Appliance Act, supra. Under its Proposition I, defendant contends that the Frisco car was not being "used on its line", within the meaning of the above-quoted Act.

Although, in defendant's initial brief, its Tulsa yards are characterized as a "repair point", it admits, in its reply brief, that the above-quoted Act covers cars being

switched from one track to another in such yards, until they are "* . * * segregated on the bad order track at the repair point for the sole purpose of repair, * * *". They take the position, however, that *all* of the cars involved in the above-described switching movement, (including the Frisco and T. N. & O. cars) had been "withdrawn from commerce" and segregated, *for the purpose of repair,* at the time of the accident; and, as evidencing this, represent its car foreman, Mr. Sartere, as having testified "* * * positively (that) * * * all the cars in the movement were bad order."

We cannot agree that the evidence, as a whole, creates no issue of fact as to whether the purpose of the above-described switching operation was merely to move "bad ordered" cars *after* they had been "* * * segregated * * * *for the* * * * purpose of repair * * * *"—as distinguished from the use of cars on defendant's "line * * * in moving interstate traffic * * *". We think plaintiff's testimony might reasonably be interpreted as inferring that, even though the T. N. & O. car may have temporarily been on a track often used as a segregation point for cars to be repaired, it was still in transit, or "commerce", and had not yet been segregated, *for the purpose of repairs.* Defendant elicited testimony from Mr. Sartere and from Mr. Akins, the engine foreman in charge of the switching crew of which plaintiff was a member, to the effect that on May 9th, after plaintiff's injury, the Frisco boxcar was coupled to the train, and segregated with the other "bad ordered" cars on "rip" track No. 3, where it was inspected early the next morning. However, defendant produced no evidence which directly contradicted plaintiff's testimony from which it might have reasonably inferred that the aforementioned "merchandise" car had been left on track No. 12 temporarily, and was slated for removal to "a separate place" (not a rip track), and was "interstate traffic". Consequently, whether, at the time of the coupling failure, the Frisco and T. N.

& O. cars were being used on defendant's "line * * * in moving interstate traffic * * *" was—even under defendant's construction of section 2, supra—a question to be resolved by the jury's interpretation and weighing of the evidence. Nor is this conclusion affected by the possible inference from some of defense counsel's argument, that, if the purpose of hooking the merchandise car onto the switching train, was to move that car to some place other than a "rip" track, such purpose was purely "incidental" to the main purpose of the switching movement, which was to take "bad ordered" cars to "rip", or "repair", tracks.

■ In the argument under defendant's Proposition II, it contends that: "Before there can be a violation of (the) Safety Act (supra) it must appear that * * *" the coupler was "* * * being properly used." Defendant's position that the coupler involved here was not properly used is based primarily upon a portion of a deposition obtained from plaintiff at some time before, and about which he was interrogated at, the trial. Apparently dealing with the speed at which the switching train approached the Frisco car for coupling with it, the questions propounded to plaintiff, together with his answers, were as follows:

"Q. All right, did it (the train) continue at this speed you claim of 8 to 10 miles an hour on up and against this car that was standing on the track?

"A. Yes, sir.

"Q. And it never slowed down?

"A. It never slowed down."

Prime fallacies in defendant's position consist of its assertion that a speed of "8 to 10 miles an hour" was not a proper coupling speed, or constituted an improper use of the coupler involved; and its assumption that the burden was on plaintiff to refute this, despite the absence of any evidence tending to show that same was in any respect an improper manner of attempting a coupling. To uphold such a position would be tantamount to ruling that plaintiff must, in order to make out a prima facie case, refute de-

fendant's plea of contributory negligence, without any evidence having been introduced to support such an alleged defense. The undisputed fact that the coupler did not function on the occasion in question was at least *some* evidence that it was defective. Defendant attempted to refute this by evidence that it later functioned properly, and that no defect was found in it upon an inspection the next day; but careful examination of the record fails to support defense counsel's representation that, according to the evidence, 8 to 10 miles an hour was not a proper coupling speed. On the contrary, examination of the pages of the casemade they cite, to support such representations, reveals that their attempts to introduce such evidence failed, by rulings of the trial court unequivocally excluding it; and no complaint is herein made that such rulings were error.

■ Although early in their argument, under Proposition I, counsel for defendant posed the question of whether or not its violation of section 2, supra, was the proximate cause of plaintiff's injury, they neglected to follow this by argument, or citation of authority, to demonstrate that such question should have been answered in the negative. It is therefore unnecessary to consider such a question in determining whether the trial judge committed reversible error in refusing defendant's request for a directed verdict. Thrasher v. Board of Governors, Okl., 359 P.2d 717. Nor, as above indicated, have we found in any of the arguments presented by defendant, under its Propositions I and II, demonstration of error in such ruling sufficient to reverse the judgment appealed from.

Under its Proposition III, defendant argues that the trial court erred in submitting to the jury plaintiff's alleged claim for future loss of earnings. The court's instruction No. 9, to which defendant saved an exception, specifically told the jury that, in determining the amount of plaintiff's recovery, if any, it should consider, in addition to his past earnings, and any pain and suffering he may have endured in the past, or was likely to endure in the future, " * * * any impairment of earning capacity he may suffer in the future * * *".

■ Defendant takes the position, first, that plaintiff's medical testimony as to whether or not his said earning capacity would be impaired, was conflicting, and/or inconsistent; and, secondly, " * * * that plaintiff's claim for loss of future wages was unsupported by any evidence * *". After carefully examining the record, we cannot agree with either position. Plaintiff's medical experts, Dr. C and Dr. H, testified that plaintiff would have a degree of permanent disability in his left wrist and hand. Dr. H refused to say that some improvement of this condition in the future was not possible, but expressed the opinion that " * * * it's a probability that it will get no better than it is presently." There was no material conflict between this, and the testimony of Dr. C, who testified, among other things:

"In all probability with that much atrophy after this length of time it will inhibit his ability to work as long as he would with a normal wrist; it will shorten his working years."

Dr. C would not venture an opinion as to whether plaintiff's disability would ever wholly prevent him from discharging the duties of his job with defendant railroad—and there is no evidence that he was familiar enough with those duties to do that—but plaintiff testified in detail as to how the disability affected, and caused changes, or adjustments, in the manner of his performance of various tasks of a switchman. Upon consideration of this, and in view of the abundance of medical expert testimony, together with demonstrations made to the jury by plaintiff in person, showing how the condition resulting from the injury restricted, and sometimes caused pain from, various uses and positions of his left arm, wrist, hand and fingers, and weakened them, we cannot say that there was no competent evidence reasonably tending to show that plaintiff's future earning capacity would be impaired. In view of the uncertainties

of the future, perhaps no one could say positively, or certainly, that plaintiff would ever lose any future earnings. Due to his comparative youth and the number of years he has already served defendant, it is conceivable that he may retire or transfer from his job as switchman before his disability, with probable aggravation by daily movement and/or advancing years, ever reaches the point where it would absolutely prevent him from performing the specific duties of that job. But this should not have the effect of mitigating or diminishing an award of damages against the party legally responsible for his injury. All the law requires, in the matter of showing the future effect of an injury, is "reasonable certainty". See Peppers Gasoline Co. v. Weber, 186 Okl. 471, 98 P.2d 1087. If the same standard of exactness was required as to that, as is required in proving most damages, there are many serious and lasting injuries, of a general similarity to plaintiff's, that would have to be endured until death, without complete, or nearly adequate, compensation. There is every indication that plaintiff's evidence, as to his alleged loss of earnings in the future, was as complete, exact, and unequivocal as the nature of his condition would permit. In view of the foregoing, we have concluded that, under the circumstances, the trial court committed no error in submitting the questioned item of plaintiff's alleged damages to the jury for consideration.

■ Under Defendant's Proposition IV, it complains of the trial court's refusal to give the jury certain instructions it requested (other than the afore-mentioned one for a directed verdict). As it is stated, the Proposition represents, in substance, that this refusal constituted a failure to submit to the jury defendant's basic theories of defense. We have carefully examined these instructions, and the argument advanced, and authorities cited in connection therewith, and have concluded, upon application of the Federal Act, supra, to the evidence in this case, that some of these instructions would have been erro-

neous, if given, and that the issues dealt with in the remainder were adequately, and correctly, submitted to the jury by instructions the court gave. We think the instructions, as a whole, fairly submitted the fundamental issues of the case to the jury. Defendant's Proposition IV therefore presents no cause for reversal.

■ Under its Proposition V, defendant characterizes as error, the trial judge's refusal to declare a mistrial, and to sustain an objection it interposed to certain allegedly prejudicial remarks of one of the plaintiff's attorneys during his closing argument to the jury. Under its Proposition VI, defendant argues that the trial court should have sustained its motion for a new trial on the alleged ground that the verdict of $21,000 was excessive, and appears to have been arrived at under the influence of passion and/or prejudice. The first allegedly prejudicial part of plaintiff's counsel's summation was the mention of plaintiff's "family" in the following excerpt from it:

"It's difficult in a situation like this, I realize, to try to put what is fair and right in dollars and cents. I think it's my duty, at least, to try to give you some suggestions on it for whatever value they may be, so at least you will know our thinking on it in drawing this petition. It's a harder situation if you have got—for example, a quarter section of land and part of it is taken away; it's not to_ hard to actually put dollars and cents value on some piece of land, but when you take away part of a man's ability to use his hand and his arm; a man who doesn't have a high school education and a man who's had only experience in electrical work and railroading, when you take away part of that from a man it's hard to know what to do. It's just like his land or his property; it's his ability to earn a living for himself and his family; * * *".

Immediately following the quoted remarks, defense counsel moved for a mistrial, and,

instead of sustaining said motion, the trial judge addressed himself to the jury as follows:

> "Ladies and Gentlemen, you are directed to completely disregard the statement of counsel with reference to any loss or damage to his family. Any reference to that is to be completely disregarded by you and is to have no bearing upon this case at all."

Defendant's other objection to a part of plaintiff's counsel's summation was made after the latter therein stated to the jury:

> "I simply ask you to consider what you think his future will be and consider that he has had pain and suffering every day and is going to have it in the future, and think of what you think is a fair amount and I merely call your attention, *if you will consider $5.00 a day, it's merely $.20 an hour."* (Emphasis ours.)

As to the above quoted remark dealing with plaintiff's family, his counsel does not claim it had any materiality, or proper place in the argument, or that such a subject should have been mentioned at any time during the trial. Their only answer to defendant's claim of prejudice from it, is, in substance, that it was "inno*cous*", that "the most * * (it) * * * denotes is that plaintiff has a family", and that any prejudice, it may otherwise have caused, was remedied by the trial judge's quoted admonition. As authority for this argument, plaintiff cites Affleck v. Chicago & N. W. Ry. Co., 7 Cir., 253 F.2d 249. In that case the court concluded that the trial judge's alleged error in not declaring a mistrial did not affect the substantial rights of the defendant, after saying that it did not appear from the amount of damages awarded plaintiff that the verdict was influenced by, or passion or prejudice resulted from, the challenged remarks of plaintiff's counsel. We do not think the same thing can be said of the verdict here, for, in the light of the evidence, it is so excessive as to admit of no other conclusion than that it was affected or influenced by passion or prejudice. In

answer to defendant's argument to that effect, for which (unlike the plaintiff in error in Edwards v. Chandler, Okl., 308 P.2d 295, cited by plaintiff) defendant laid a predicate in its motion for a new trial, plaintiff cites the cases of Hayes v. Baltimore & O. R. Co., D.C., 112 F.Supp. 605; Rouse v. New York, C. & St. L. R. Co., 349 Ill.App. 139, 110 N.E.2d 266; Wilson v. Pennsylvania R. Co., D.C., 141 F.Supp. 233, and Carrano v. Red Star Transit Co., D.C., 58 F.Supp. 643, in which the plaintiffs suffered wrist, and/or arm injuries, and verdicts larger than the one here were upheld as not excessive. Examination of all the cited cases reveals that, in them, plaintiffs suffered more disabling injuries and/or lost much greater sums of wages, and/or underwent longer and more painful and expensive treatment than has the plaintiff in this case. Here, plaintiff lost a total of only 38 days from his job, and his wages were $19.10 per day. Therefore, as pointed out by defendant, plaintiff has lost a total of only $725.80 in wages. He seeks nothing for medical, or other, expenses incurred on account of the injury; and, because of wage increases, he is now earning more, on the same job, than he was earning before the injury.

We recognize that improper argument of counsel is a matter that lies largely within the discretion of the trial judge, and that appellate courts should not set aside judgments for that reason " * * unless it clearly appears that such * * * argument influenced the verdict." St. Louis-San Francisco Ry. Co. v. King, Okl., 278 P.2d 845, 850. In determining whether the attorney's conduct had that effect, despite the trial judge's corrective measures, we look to the record and consider all of the pertinent facts and circumstances shown therein. Magnolia Petroleum Co. v. Sutton, 208 Okl. 488, 257 P.2d 307. When, upon such consideration, it appears that the verdict is not warranted, "* * * then it can only be concluded that it was the result of prejudice, mistake, confusion or misapprehension on the part of the jury."

Atchison, Topeka & S. F. Ry. Co. v. Messmore, Okl., 339 P.2d 779, 783. Since that is the conclusion we have reached, and it is our opinion that the verdict allows plaintiff almost twice as large a recovery as the evidence justifies, we hold that the trial court should have sustained defendant's motion for a new trial. His order overruling it is therefore reversed, unless plaintiff files a remittitur of $10,000.00 in that court within 10 days from the time the mandate herein is spread of record there. Upon the filing of such remittitur, the trial court's judgment will stand affirmed.

WILLIAMS, C. J., and HALLEY, JOHNSON, JACKSON and IRWIN, JJ., concur.