**ST. LOUIS–SAN FRANCISCO RAILWAY COMPANY, a Missouri Corporation, Plaintiff in Error,**

v.

**Leonard TOMPKINS, Defendant in Error.**

No. 40819.

Supreme Court of Oklahoma.

Dec. 21, 1965.

**2**

E. D. Grinnell, Jr., St. Louis, Mo., and Franklin, Harmon & Satterfield, Oklahoma City, for plaintiff in error.

John H. Kennedy, Oklahoma City, for defendant in error.

BLACKBIRD, Justice.

The judgment complained of in this appeal was entered on a general verdict for defendant in error in his action, under the Federal Employers' Liability Act, 45 U.S. C.A., sec. 51 et seq., for damages for personal injuries, against plaintiff in error, as defendant. The parties will hereinafter be referred to by their trial court designations of "plaintiff" and "defendant", respectively.

On the day of plaintiff's alleged injury, November 3, 1960, he had been employed by defendant for many years, as a railroad car cleaner in its yards at the Union Depot on Oklahoma City's Southwest 7th Street. While using a hose to wash off the outside of a mail car of a train to be "made up" to go to St. Louis, Missouri, as the "Will Rogers Special", he was hailed by Mr. Jess W. Bryant, one of defendant's "lead passenger car inspectors", about 2:00 o'clock P.M., and directed to come a few feet down the track to where Bryant was trying to put a brake shoe on the "center"

wheel of a baggage car (No. 369) in the same train, for the purpose of helping Bryant. When plaintiff answered Bryant's summons for help, Bryant had one end of a simple hand tool, called a "brake shoe bar" (on the order of a crowbar) wedged between the wheel and its brake head for the purpose of prying the brake head far enough away from the wheel to make room for the insertion between them of a used brake shoe. Bryant directed plaintiff to pull hard on the bar handle while he tried to install the shoe. While plaintiff, in a stooped-over position was pulling on it, the bar slipped out from between the wheel and the brake shoe, and plaintiff fell to the chat-covered ground along the track. Bryant then temporarily discontinued the endeavor, left the scene, then returned with a longer bar, called a "track aligning bar", and was accompanied by a car-man inspector named Earl F. Robinson. With Robinson and plaintiff both pulling on the longer bar, Bryant was able to install the brake shoe. Plaintiff then went back to where he had been cleaning the mail car. He also worked the next day, which was Friday, but, on Saturday morning, he reported to his foreman that he was in need of, and procured, a "Doctor's Order" for medical treatment.

In connection with a report of the accident to defendant, its claim's adjuster, R. C. Barling, interviewed plaintiff, using a tape recorder.

After a few weeks of treatment and absence from his work, plaintiff's employment by defendant was terminated.

In the amended petition he filed in this action, plaintiff alleged that his fall was proximately caused by defendant's negligence, acting through Bryant, in the following particulars:

"(a) Defendant negligently required plaintiff to perform an unfamiliar mechanical duty without proper instructions or supervision pertaining to the wheel, brake and repairing of same.

"(b) Defendant Bryant was negligent in inserting the wedged end of the long steel rod between the brake beam and wheel edge, a position where it would slip under force, and ordering plaintiff to exert a great force on the end of the steel rod while Bryant attempted to hammer the brake drum into position.

"(c) Defendant was required to perform his labor under the direction of his foreman, Jess Bryant who was responsible for placing plaintiff in a safe place to work, and was also responsible for the methods by which plaintiff was required to perform labor. Plaintiff alleges that defendant was guilty of negligence in requiring plaintiff to work under the supervision and direction of said foreman and in requiring plaintiff to perform labor in a perilous and unsafe manner prescribed by said foreman. Defendant's said negligence was the proximate cause of plaintiff's fall and his injuries.

"(d) Defendant failed to direct sufficient employees to perform the required work. The negligence of the defendant as thus described was the proximate cause of plaintiff's injuries.

"(e) Defendant's agent knew, or should have known, that the peremptory command to pull harder would inspire immediate obedience and deprive plaintiff of opportunity to reflect upon hazard or danger to which he was exposed.

In his amended petition, plaintiff also alleged that his "bodily injuries" from the fall " * * * consisted of a severe wrenching and bruising of the nerves, soft tissues, muscles and cartilage of his neck and back, and a bruised right knee." He also alleged, among other things, that because of the fall and wrenching of his neck and back, his pre-existing advanced arthritis was aggravated and rendered active, and he now suffers disabling degenerative arthritis of the entire spine. Plaintiff further alleged

that he had also suffered loss of earnings in the total amount of $5,650.00; that he would continue to suffer pain and mental anguish the rest of his life; that his injuries are crippling, permanent and progressive; and, without any other itemization of them as to amount, except as here shown, he prayed for the total sum of $107,408.00 in damages for "physical pain and suffering, mental anguish, permanent injuries, physical impairment, loss of earnings, reduced earning capacity, future pain and suffering, future mental anguish, and future medical expenses, * * *", which latter item, by an amendment at the close of the evidence, was alleged would cost $100.00 annually, or a total of $1600.00.

Defendant's answer contained a general denial, with some special denials, and alleged, among other things, that plaintiff chose his own method of pulling on the bar and that the accident was caused, or contributed to, by carelessness and negligence on his part. It also denied that plaintiff's fall injured him in any way, and alleged that his disability " * * *, if any, was the result of pre-existing difficulties * * * *", and also denied that his earning capacity had been impaired.

The issues were joined by the filing of plaintiff's reply in November, 1961, but the case did not come to trial until May 20, 1963. In the interim, plaintiff's deposition was taken on February 7, 1962. The carman inspectors, Bryant and Robinson, were among the witnesses who testified for defendant at the trial. The defendant challenged the sufficiency of the plaintiff's evidence by demurrer, and the sufficiency of the evidence as a whole by a motion for a directed verdict, before the jury was instructed.

Among the instructions which were requested by defense counsel, but refused by the court, was defendant's requested instruction "No. 19", which would have directed the jury, in arriving at its verdict, to reduce to present value, or worth, any loss of earnings it found plaintiff would suffer in the future.

After its deliberations, the jury's general verdict for plaintiff was in the amount of $20,000.00 for which judgment was entered, as aforesaid.

After the overruling of defendant's motion for a new trial, it perfected the present appeal.

■ By the third "Proposition" which defendant urges for reversal, it maintains that the trial court erred in refusing to give its above mentioned requested instruction No. 19. In support of this proposition, defendant cites St. Louis-San Francisco Ry. Co. v. Floyd, 146 Okl. 42, 293 P. 250, 77 A.L.R. 1431, and Missouri-Kansas-Texas Railroad Co. v. Edwards, Okl., 361 P.2d 459, in which we said (at page 465):

" * * * Such an instruction is necessary and proper where recovery is sought under the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq., * * *.

* * * "

Since defendant requested such an instruction at the trial (see Empire Oil & Refining Co. v. Fields, 188 Okl. 666, 112 P.2d, 395, 405) and here urges that the verdict and judgment are excessive (see St. Louis-San Francisco Railway Co. v. King, Okl., 368 P.2d 835) it has laid the necessary predicate for consideration of this error as ground for reversal. In this connection, notice, in addition to the annotation following the Floyd Case, supra, the annotation at 154 A.L.R. 796, 802ff, and O'Connor v. United States (U.S.C.A., 2nd Cir.) 269 F.2d 578, 585, citing Chesapeake & Ohio R. Co. v. Kelly, 241 U.S. 485, 491, 36 S.Ct. 630, 632, 60 L.Ed. 1117, and other cases.

In the "Conclusion" portion of his brief, plaintiff makes the following concession:

" * * *

"Under the Oklahoma cases it appears that the jury should have been instructed to reduce or discount the loss of earnings to their present cash value.

\* \* \*."

Then he says that if we believe this was error, "\* \* \* it would appear that an incresitur to plaintiff would be proper." Then he argues (apparently on the basis on plaintiff's testimony that, before the accident, his wages were "About four thousand dollars a year", and that "outside" work brought him "about seventy-five dollars a month", additional) that plaintiff earned $4900.00 annually, that his lost earnings, computed at that rate from the time of the accident to the date of the trial, was $12,400.00, and therefore that the balance of the verdict and judgment in the amount of $7600.00 is all that should be discounted at 6%. Plaintiff's argument, however, is all based upon his stated assumption, and premise, that the entire amount of the verdict was for "loss of earnings."

We cannot undertake such an assumption in view of the evidence introduced in support of various other items of plaintiff's claimed and established damages. (In this connection, notice our rejection of the assumption proposed by defendants in Bready v. Tipton, Okl., 407 P.2d 194, 205). For instance, it was stipulated that he had incurred a medical bill of $158.00 with Dr. T. Because of this and other less definitely evaluated items of damages, such as pain and suffering, not subject to reduction to present value (notice the latter part of the quotation from Collins v. McPherson, 91 Ga.App. 347, 85 S.E.2d 552, 555, in Bready v. Tipton, supra), we cannot apply the principles employed in Gallaspy v. Warner, Okl., 324 P.2d 848, and Maney v. Cherry, 170 Okl. 469, 41 P.2d 82 (from which plaintiff quotes) either to here modify the lower court's judgment, or to authorize a remittitur. Furthermore, the evidence is conflicting as to the extent of plaintiff's disability, and as to the degree to which the accident may have contributed to the disability potential of his concededly pre-existent degenerative osteoarthritis. Although all the medical experts who testified at the trial admitted the possibility of such aggravation and did not deny plaintiff's claimed pain and suffering from it, his own witness, Dr. H, testified, in part, as follows:

"\* \* \*

"Q Now, what condition, if any, did you find as to Leonard Tompkins when you first examined him in January 1961?

"A The condition I found was one of generalized degenerative, or wear and tear, arthritic involvement of the spine.

"Q Let me ask you, Doctor, was there anything in your findings that you can say his condition was caused by any accident?

"A So far as the actual physical examination, one could not say that an accident had been had.

"Q Was there anything in the x-rays or in your physical findings that indicated to you that an accident had occurred?

"A Not in the physical examination or the x-rays, no, sir.

"\* \* \*

"Q Do you have an opinion as to whether or not his present condition, the condition in which you last saw Mr. Tompkins, would be any different today if he had not had an accident on November 3rd, 1960?

"A The answer would have to be, he could be in the condition he is now with an accident or without an accident."

The defendant's witness, Dr. R, who also examined plaintiff, testified that his examination did not reveal any evidence of injury, and, like a third physician who examined plaintiff, he testified to the effect that a fall, like plaintiff had, could have caused only a "temporary" aggravation of his osteo-arthritis of three to six weeks' duration. He expressed the opinion that plaintiff is able to go back to work. But, as to this, Dr. H testified as follows:

"* * *

"Q Doctor, will this man ever be able to return to work for the Frisco as a coach cleaner?

"A This is again unknown. Most people with this degree of change are not able to."

With the evidence conflicting, as above indicated, concerning the extent of plaintiff's permanent disability, if any, and without any indication in the record as to how much, if any, of its lump sum verdict, the jury may have assessed as plaintiff's damages for lost earnings (past and/or future) and how much, if any, to his other claimed items of damages, such as pain and suffering, and future medical expenses, we cannot determine with any degree of certainty whether or not the judgment is excessive, or by what amount, if any, it should be reduced. In this situation, and with the indications that have come to our notice that said judgment *may be* excessive and the verdict larger than it might have been had the jury been properly instructed, we have no alternative but to reverse the trial court's judgment overruling defendant's motion for a new trial on account of said court's conceded error in refusing defendant's requested Instruction No. 19; and that shall be the order of this court. In view of this determination and our opinion that all of defendant's other propositions, except one, concern alleged errors which may not occur at a new trial, it is necessary now to deal only with its Proposition I, which pertains to the matter of whether the evidence established plaintiff's alleged cause of action against defendant.

 In contending that the trial court erred in overruling its challenge to the sufficiency of the evidence, defendant represents that there was no competent evidence to support the verdict and judgment. Its brief summarizes plaintiff's allegations of its negligence as follows:

"(1) Failed to properly instruct the plaintiff";

"(2) Negligently inserted the bar between the brake head and flange of the wheel";

"(3) Failed to furnish the plaintiff a safe place to work";

"(4) Failed to furnish plaintiff sufficient help"; and

"(5) Through its agent negligently ordered plaintiff to pull hard on the bar."

Concerning "(1)" above, plaintiff's counsel refers to Mr. Bryant's testimony that he told plaintiff to "Pull hard" and to "pull steady" on the bar being used to pry the brake shoe away from the wheel at the time of plaintiff's fall. Counsel says, among other things: "It is difficult to conceive of more explicit instructions concerning the method to be used in pulling on the bar than those which were given." He cites a federal case as authority for the further statement that: "Before an employer can be held liable for failure to warn, there must be something to suggest that a warning in addition to that which has already been given is necessary."

Without describing all of plaintiff's counsel's arguments in detail, we are of the opinion, after thoroughly considering them and examining the record, that there was evidence in this case to "suggest", and from which the jury might reasonably have concluded, that, under the circumstances, defendant, through Bryant, owed plaintiff the duty of further instructing, or warning, him with reference to pulling on the bar. We think that in view of the evidence showing that Bryant was working between plaintiff and the railroad car's wheel in a situation in which plaintiff's view of the other end of the bar was apparently obstructed, and considering the stooped-over position which plaintiff was in while pulling on the bar, with chat under his rubber-boot-clad feet, the jury might well have been justified in concluding that Bryant was negligent in not instructing plaintiff as to a safe position, posture, or stance, to assume, or take, in pulling on the bar. Insofar as the record reveals, plaintiff had

never before been called upon to perform, nor had performed, any such task, and was relatively ignorant as to the dangers involved. As to this, the record establishes—to paraphrase what we said in the King case, supra—there was "latent hazard of fortitutious injury not involved in simpler * * *" pulling.

Furthermore, although plaintiff apparently did not know, or at least did not testify specifically as to, what caused the bar to slip from between the brake head and the wheel after he started pulling on it, (though defense counsel cross examined him concerning a statement he had made in his disposition about "jerking") and defendant's witness, Bryant, gave testimony to the effect that if such a bar, in that situation, is pulled on forcefully and steadily it will not slip, or dislodge, plaintiff testified that (while he was pulling on the bar) Bryant was "using" a hammer "* * trying to make that beam break loose so he could put that shoe in there." Bryant's testimony was to the effect that he used the hammer only "to put the key in" after "the shoe was placed", but he had also testified that he had been able to wedge only the top of the brake shoe in between the brake head and the wheel, before he procured plaintiff to help him. We think that, on the basis of the record as a whole, and upon exercising its prerogative to weigh and evaluate Bryant's testimony, against evidence that tended either to directly contradict it, or to support contrary inferences, the jury might have reasonably concluded that the brake shoe bar was caused to slip out of place by vibration, impact or jolt, from blows upon the metal brake apparatus by Bryant's hammer.

Also, we think that there was sufficient evidence to support a reasonable conclusion by the jury that defendant, through Bryant, was negligent in not procuring for use in the operation—before he asked plaintiff to help him—the longer and straighter track aligning bar and another man to help pull on it, both of which the facts tend to show were necessary to the project's successful and safe accomplishment. The evidence shows that, before summoning plaintiff to help him, Bryant had already determined that the brake head could not be pried far enough away from the wheel by one man using the shorter brake shoe bar, to permit insertion of a new brake shoe, or the thinner used one, and that the operation had some unusually difficult aspects. This evidence has a tendency to offset, or devaluate, other evidence, relied upon by defendant, that the services of only one man were *usually* needed in installing a brake shoe. The evidence was undisputed that it is more difficult to install such a shoe on a passenger train car wheel (such as the one involved) than on a freight car wheel.

In view of the foregoing considerations, we cannot say that the record is without competent evidence reasonably tending to show defendant negligent in one or more of the particulars upon which plaintiff's cause of action was based. However, in view of the trial court's reversible error, hereinbefore described, he should have sustained the defendant's motion for a new trial. The judgment appealed from overruling said motion is therefore reversed, and this cause is remanded to said court with directions to grant a new trial.