CHICAGO, ROCK ISLAND AND PACIFIC RAILROAD COMPANY, a Corporation, Plaintiff in Error,

v.

Everett L. HAWES, Defendant in Error.

No. 41475.

Supreme Court of Oklahoma.

Jan. 31, 1967.

Robert E. Shelton, Philip L. Savage, of Savage, Gibson, Benefield & Shelton, Oklahoma City, for plaintiff in error.

R. Dean Rinehart, of Rinehart, Rinehart & Rinehart, El Reno, for defendant in error.

BLACKBIRD, Justice.

This appeal involves an action instituted by defendant in error, as plaintiff, against the plaintiff in error, as defendant, to recover damages, under the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq., for personal injuries plaintiff sustained on July 10, 1961, during the attempted transporting of a large Burrow crane on two of defendant's flat cars coupled together. The crane, whose chasis had on it steel wheels that could move forward on a length of railroad track laid the length of, and on top, of the rear car, was to be unloaded and employed in the installation of railroad rails on the west end of a side track used by defendant's passenger trains at Yukon. The parties will hereinafter be referred to by their trial court designations of "plaintiff" and "defendant".

On the day plaintiff was injured, he was 49 years of age, had been employed by defendant 22 years, and his regular position was that of a "conductor", but, for the rail-installation job, he had been "called" to be "pilot" for the Burrow crane.

On the evening previous to plaintiff's injury, the crane-carrying two-car unit was standing on a section of curved track. Before plaintiff arrived there the next morning, another of defendant's employees, Mr. Green, the crane operator, had preceded him there, and had removed the chains from around the crane's wheels and the wooden chocking, or scotching, blocks that had been placed under them to keep them from turning and the crane from moving forward on the rails extending across the flat car's floor. By the time plaintiff arrived there, defendant's roadmaster, Mr. Winters, who was in charge of installing the track extension, noticed that the track, on which the crane-carrying flat cars were standing, was curved. Knowing that the ramp used as a runway in moving the crane thereon from its perch on the flat car, to the train track below, could not be employed successfully on curved tracks, Mr. Winters decided that the crane-carrying two-car unit should be propelled forward about 15 to 20 feet to a place where the roadbed was straight and the crane's ramp would guide it straight from the floor of its flat car to the railroad track below. It was decided to propel the crane-carrying two-car unit this few feet by tying the crane's cable to the track out in front of the unit, and then have the crane's motor pull the unit forward by tightening the cable extending out of the crane's boom.

To start the car-propelling operation, Mr. Green, from his position in the crane's cab, and using the crane's motor for power, raised its boom up off the ramp in front of the crane, and swung it over to the side of the two-car unit, so that a section hand could fasten the end of the boom's cable to the railroad track ahead of the cars. The plaintiff ascended from the ground to the floor of the front, or "trailer", car of the two-car unit, and released that car's brakes, then he stepped across the coupling to the rear car, and standing on this car's front end, astraddle the heavy cross tie fastened across that end to keep the crane from running off of it, referred to as a "buffer", "bumper", or "header", he released this car's brakes and signaled to Mr. Green, in the crane's cab behind him, to start tightening the cable. When the crane's motor began to wind up, or tighten, the cable, the two flat cars did not move, and the roadmaster, who was on the ground (apparently observing the operation) "bled air off of the air cylinder." Thereupon, the crane operator, Green, "made another pull on the cable" with the crane's motor, and

the crane, rather than the two flat cars, moved forward on its tracks and shoved the ramp forward, pinning plaintiff's right foot and ankle (where he stood on the flat car's floor) between the ramp's front end and the header. The crane operator applied the crane's brakes, but the crane's wheels slid on its tracks, and, before plaintiff could be freed from the place where his foot and ankle were trapped, he had suffered the injuries which precipitated his commencement of this action, in June, 1964.

In his petition, plaintiff alleged his injury resulted in his loss of the distal end of the tibia in the vicinity of the medial malleolus, causing a restriction of the foot in lateral movement of the ankle and foot, with resulting damage to the soft tissue structure about the ankle joint and causing traumatic arthritis in the ankle joint. Plaintiff further alleged that, as a result of the injury, surgery had to be performed on the ankle, and he has a 35% permanent partial disability to his right foot.

Plaintiff further alleged that the disability would cause him a loss of future earnings, and prayed for his costs, and for damages in the total sum of $50,000.00, including loss of future earnings and pain and suffering, as well as an item of $8,000.00 for lost earnings since his injury. In his petition, plaintiff attributed his injury to defendant's negligence in failing (1) to provide him a reasonably safe place to work; (2) to provide him a reasonably safe and proper method to perform his work, as required by the Federal Employers' Liability Act (hereinafter sometimes referred to by the initials "FELA"), and (3) in failing to properly secure the crane and ramp, thus allowing them to move forward on the flat car during the wenching operation.

Defendant's answer consisted of both a qualified general denial, special denials, a plea of contributory negligence, and an admission that plaintiff was injured in the course of his employment. One of the special denials was that plaintiff was ordered to perform the task in which he was engaged when injured, in the manner in which he performed it. In this connection, defendant further alleged that plaintiff voluntarily chose that method, when a safer one was available, and, in thus unnecessarily placing himself in a hazardous position, was contributorily negligent. Another of defendant's denials was that plaintiff had suffered any "dollar damages." Defendant further alleged that it had provided plaintiff with medical attention and that he had recovered sufficiently to resume his normal work, without any loss of wages. Defendant also pleaded that any damages the jury found plaintiff suffered from negligence on its part, should be diminished by reason of his contributory negligence.

Upon the issues joined by the above described pleadings, this case went to trial before a jury in December, 1964. At the close of the evidence, when both parties had rested, defendant interposed a motion for a directed verdict, which was overruled, with allowance of an exception. After defendant had submitted seventeen requested instructions, all of which were refused, the court instructed the jury and submitted the case to its consideration. After its deliberations, the jury returned a general verdict for plaintiff in the amount of $30,000.00 and judgment was rendered accordingly.

Defendant submits its arguments for reversal under two Propositions. Those directed at the trial court's assigned error in rejecting its challenge to the sufficiency of the evidence are set forth under "PROPOSITION I", which is:

"The evidence as a whole is insufficient to establish negligence on the part of defendant, which was the proximate cause of the plaintiff's injury."

Although the first part of defendant's argument under this proposition is devoted to an attempt to show the inadequacy of the evidence to prove that there were alternate methods of moving the two-car-unit carrying the crane, that were available and safer than by winching it (as was being done

when plaintiff was injured) it would unnecessarily lengthen this opinion to deal with that portion of defendant's brief. For the purpose of this opinion, we will assume, without deciding, that such other methods were unavailable, and direct our attention exclusively to whether or not there was sufficient evidence to take the case to the jury upon plaintiff's allegation that defendant's failure to discharge its duty to furnish him a safe place to work, lay in its failure to guard against his injury from the crane's being pulled forward, pushing its ramp against his foot and ankle.

█ Defense counsel apparently recognize that at the core of this issue, the question of whether or not defendant's roadmaster, Winters, and crane operator, Green, were negligent in not seeing that the chains were replaced on the crane's wheels and/or the chocking, or restraining blocks, which he had removed from in front of them, before plaintiff arrived on the job, were returned there, before any attempt was made to move the flat car (on which it stood) by the method that was employed. They argue, however, that to determine defendant was negligent on account of this failure "to put the blocks back" would be applying a "standard of care * * * all out of proportion to the risk involved." We cannot accept such an argument, or statement, as our conclusion, because, in our opinion, such determination was, under the evidence in this case, the prerogative of the jury. This court has often reiterated— and it is the general rule—that where the standard of human conduct by which the parties' negligence, or their lack of it, is not prescribed by law, the determination of the matter must be left to the jury. Thompson v. Hertz Corp., Okl., 366 P.2d 752, 754. See also Schulz v. Pennsylvania R. Co., 350 U.S. 523, 76 S.Ct. 608, 100 L.Ed. 668, therein quoted, in which the court said:

"* * *

"Surveyors can measure an acre. But measuring negligence is different. The definitions of negligence are not definitions at all, strictly speaking. Usually one discussing the subject will say that negligence consists of doing that which a person of reasonable prudence would not have done, or of failing to do that which a person of reasonable prudence would have done under like circumstances. Issues of negligence, therefore, call for the exercise of common sense and sound judgment under the circumstances of particular cases. '(W)e think these are questions for the jury to determine. We see no reason, so long as the jury system is the law of the land, and the jury is made the tribunal to decide disputed questions of fact, why it should not decide such questions as these as well as others.' Jones v. East Tennessee, V. & G. R. Co., 128 U.S. 443, 445, 9 S.Ct. 118, 32 L.Ed. 478, 480 (1888). * * *."

Defense counsel's argument reflects their cognizance of Mr. Green's testimony tending to show that he knew, or should have known, that when the attempt was made to pull the flat cars by the crane's motor and cable, without the chains being around the crane's wheels, or the wooden blocks being under them, said wheels would turn, or slide, on their rails; but they contend, in effect, that it made no difference if the crane would slide or move forward—that the crane operator's knowledge that the crane would move forward under such circumstances, when coupled with the fact of plaintiff's injury, did not warrant the conclusion that defendant was negligent. The short answer to this argument is that such facts constitute some evidence reasonably tending to show negligence on defendant's part. Reference to that portion of Mr. Green's cross examination, which defendant's brief cites as supporting its statement that it made no difference if the crane did slide, shows, when examined in context and in the light of the rest of Green's cross examination, that the idea the witness was trying to convey was that, as long as there was a header to keep the crane from rolling off of the end of the flat car, its sliding, or moving forward, was not fatal to the success of the flat car moving operation.

Nor is there merit to defendant's argument to the effect that the element of foreseeability is absent from defendant's conduct (through its employees, Winters and Green). Though its brief represents that the purpose of the timber buffer, bumper, or header, extending across the front end of the flat car near the brake staff and wheel, was to protect, from the crane's movement, anyone operating the brake wheel (rather than just to keep the crane from running off the car), and the brief further states that nothing in the record indicates that the crane operator knew, or had any factual basis for anticipating, that, after plaintiff got on the flat car to release its brake, he "had his foot anywhere but on the far side of the bumper", we think, after thoroughly examining the testimony of plaintiff and Mr. Green and Mr. Winters, that there was sufficient basis therein for the following reasonable inferences:

(1) That there was so little surface on the flat car's floor between its front edge and the buffer, bumper, or header, on which a person could stand, that plaintiff could not have exerted the strength necessary to turn the brake wheel and accomplish the release, or setting, of the car's brakes after release (with the weight the car was carrying) without danger of losing his balance and falling, unless he assumed the wide stance, with one foot on either side of the header, that plaintiff had, at the time the crane's ramp struck his foot and ankle; and (2) That even though neither Green nor Winters may have actually seen exactly where plaintiff's right foot was located (in relation to the ramp and header) they should have known, or foreseen, that plaintiff would have to take that stance, or position, to successfully accomplish such task.

A portion of Mr. Winters' cross examination is as follows:

"Q Was there room for Mr. Hawes to have stood out there on this side of the buffer?

"A. Well, I would say not, that's pretty close there.

\* \* \* \* \* \*

"Q He would have had about 16 inches there, wouldn't he?

"A About 16 inches, that's right.

"Q Isn't that plenty of room to stand?

\* \* \* \* \* \*

"Q All right, sir, could he have stood over here on this side of the flat car?

"A He could have stood on the other car, yes, sir, plenty of room over there.

\* \* \* \* \* \*

"Q (\* \* \*) All right, if you had known when you got there, Mr. Winters, that these cars were on a curved section of track and were going to have to be moved, would you have told your operator to unchain and unblock it before the movement was made?

"A No, I wouldn't. \* \* \*"

Plaintiff, by way of explaining why he boarded the flat car with crane and ramp on it, to operate the brakes of that car, rather than doing this while standing on the front, or trailer, car of the two-car unit—testified that the brake on the rear car was tighter than on the front, or trailer, car. On cross examination, plaintiff further testified as follows:

"\* \* \*

"Q Tell the jury if you could have gotten over on this end of the other flat car and used this brake right here (indicating), to have stopped the cars?

"A Yes, I could have.

"Q That just didn't occur to you at the time, did it?

"A It occurred to me at the time this would have been, in my estimation, a better brake.

"Q \* \* \*—You released the brake on the trailer car first, didn't you?

"A Yes, sir.

"Q The trailer car, now, is the one we call that has the boom out over it, is that right?

"A Yes.

"Q And then you released the brakes on the car that the crane was on, next?

"A Yes, sir.

"Q   And you could have got over here on the other car and used that brake, but that just didn't occur to you at the time?

"A   Yes, it occurred to me.   *   *   *"

In view of the evidence in this case, we find wholly unconvincing the extensive attempt in defendant's brief to demonstrate that its employees, Winters and Green, did not have sufficient knowledge of plaintiff's position at the rear car brake staff, and of the foreseeable consequences for his safety, of tightening the cable on the crane's boom, without the crane's wheels being chained to their tracks and the wooden chocks being under them, to hold defendant guilty of actionable negligence in the matter of plaintiff's injury. It is our opinion that this was an issue properly determinable by the jury, especially in cases, like the present one, commenced under the FELA, supra, where, as said in Rogers v. Missouri P. R. Co., 352 U.S. 500, 506, 77 S.Ct. 443, 448, 1 L.Ed.2d 493, 499:

"Under this statute the test of a jury case is simply whether the proofs justified with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury * * * for which damages are sought. It does not matter that, from the evidence, the jury may also with reason, on grounds of probability, attribute the result to other causes, including the employee's contributory negligence."

As to contributory negligence on the part of plaintiff, it has already been mentioned that the restraining chains and chocking blocks had been taken away from the crane's wheels before plaintiff reached the job site. Whether he knew this when he got on the crane-carrying flat car, to operate that car's brakes, does not unequivocally appear in the record. At one point in plaintiff's direct examination, his counsel asked him if he knew the "crane was not secure on the flat car", but the court sustained defense counsel's objection to the form of this question, plaintiff's counsel then directed the striking of the question,

and it was never asked in another form. In its petition, and in the fourth instruction defendant requested of the trial court, it recognized that plaintiff's contributory negligence, if any, served not as a certain and complete defense, but that it would diminish the amount of plaintiff's possible recovery; and we find untenable defendant's argument to the effect that such negligence, on plaintiff's part, in getting on the car that had the crane and ramp on it, to stand in the position he assumed, to release and reset that car's brakes, rather than remaining on the trailer car to do this, was an intervening act breaking the succession of Winters' and Green's negligence, as the proximate cause of plaintiff's injury. Whether this was true could not be determined as a matter of law, on the basis of the evidence and the rules applicable thereto under the FELA. We can only conclude that the questions of whether any negligence on the part of the defendant, through its employees, Winters and Green, "played any part" in producing plaintiff's injury, or whether it was proximately caused by contributory negligence, and to what extent, were for the jury to decide. Notice what was said concerning the determinations to be made concerning negligence of more than one party in Missouri Motor Distributing Co. v. Barker, 170 Okl. 183, 39 P.2d 544. It therefore follows that the trial court committed no error in overruling defendant's motion for a directed verdict; and we so hold.

Defendant's argument under its "PROPOSITION II" that "The verdict was excessive", has three parts, discussed in plaintiff's brief under the subheadings: "A", "B" and "C". We will employ the same subheadings in dealing with it.

Under the second, or "B", part of defendant's argument, it contends that such excessiveness was the result of its being prejudiced, in the jury's determination, from improper remarks in the closing argument of plaintiff's counsel. The remarks complained of are said to have been made during the opening part of plaintiff coun-

sel's argument, and before defense counsel's closing argument, which was followed by a final closing argument of plaintiff's counsel. The casemade herein reflects that the court reporter was not called into the court room, and requested to record any of the argument, until after plaintiff counsel's final closing argument had started, so that we cannot determine from the record before us just what were the remarks objected to by defendant. The only objection, or motion, directed at such remarks upon which this record shows a ruling by the trial court, is a motion for a mistrial interposed by defense counsel after the cause was submitted to the jury and they had retired to deliberate as to what their verdict should be. Defendant's motion thus came too late to lay a predicate for any assigned error in this appeal. This, in substance, was our determination in Booth Tank Co. v. Symes, Okl., 394 P.2d 493, 497, which involved a similar situation. Accordingly, under the circumstances, we forego any expression of opinion on this part of the defendant's argument.

In the first, or "A", part of defendant's argument under its "PROPOSITION II", its counsel seems to concede that, under the allegations of plaintiff's petition and the evidence introduced in support thereof, he was entitled to recovery for wages which, on account of his injury, he had already lost at the time of trial, in the amount of $8,000.00. On this hypothesis they say that the jury awarded him the remaining $22,000.00 (of its 30-thousand-dollar verdict) "for loss of future earnings, and pain and suffering." Defendant's brief then charges that "the trial court erred by not instructing the jury to consider the present value of any future earnings which plaintiff might lose * * *". Defendant complains specifically of the wording of the court's Instruction No. "13" because it directs the jury, in arriving at the amount of plaintiff's damages, to consider any impairment of his future earning capacity and loss of future earnings, that he would sustain, without—its counsel say—directing reduction of "any sums which they might deter-

mine * * * (he) * * * would have otherwise received in the future to an amount which reflects the present value of such sum." Counsel refer to the testimony of plaintiff's physician, Dr. M, to the effect that plaintiff, at the time of trial, was 52 years old, that his right ankle was stiff from traumatic arthritis which in his opinion is progressive and will increase to the extent that when he becomes 60 years of age he will no longer be able to perform certain named tasks, and to plaintiff counsel's closing argument to the effect that because of his injury, plaintiff's years between the ages of 60 to 65 "will come off of the tail end" of his working career, or life, and he will lose an average of $8,000.00 in earnings during each of those years.

The court's Instruction No. 13 was as follows:

"You are further instructed that if you find and believe by a preponderance of the evidence in this case that the defendant, through its agents, servants and employees was guilty of negligence as alleged in plaintiff's petition, and that such negligence, if any, was the proximate cause, either in whole or in part, of the accident complained of in plaintiff's petition, and that such accident resulted in injuries and damage, if any, to plaintiff, then *it will be your duty to* return a verdict in favor of the plaintiff and *fix the amount of his recovery, which* amount should be in such sum as in your good judgment *will reasonably and fairly compensate* him for such injuries as he may have sustained.

"In determining what this amount should be you may take into consideration the nature and extent of his injuries, and whether they be temporary or permanent, any loss of wages he may have sustained, any impairment of earning capacity that he may sustain, and any loss of earnings that he may sustain, any pain and suffering he may have endured or may be likely to endure in the future, and taking all these things into consideration,

together with all of the other evidence in the case, you will return such verdict as the evidence warrants when measured by these instructions. In no event, however, to exceed the amount sued for in the sum of $50,000.00." (Emphasis ours.) It was stipulated, after the jury had retired to deliberate, that: "* * * exceptions by either of the parties may be endorsed on the instructions at any time up until the time of the presentation of the motion for a new trial." The casemade reflects no exception to the above quoted instruction. However, defendant excepted to the trial court's refusal to give its requested Instruction "No. 4" and alleged this was error in its motion for new trial. Defendant's "Requested Instruction No. 4" was in the following words:

"Should you find from a preponderance of the evidence, under the instructions, in favor of the plaintiff, then *you may assess the amount of recovery for such damages,* if any, which you find from a preponderance of the evidence were sustained by plaintiff as a direct and proximate result of defendant's negligence, and which must not be oppressive or unconscionable, but *which you find will fairly and reasonably compensate plaintiff* insofar as the same may be computed in money, *and* in this regard *you may* take into consideration the age of plaintiff, physical condition of plaintiff immediately before and after the accident; the nature and extent of his injuries, if any; whether the injuries, if any, are permanent or otherwise; the physical impairment, if any, the pain and suffering endured and likely to be endured in the future, if any; and *award such sum as you may determine will reasonably compensate plaintiff* therefor, subject to the following:

"In the event you find from a preponderance of the evidence that plaintiff was guilty of contributory negligence which caused or contributed to the accident and injuries, if any he sustained, the damages, if any, which you shall allow will be diminished in proportion to the amount of contributory negligence attributable to plaintiff." (Emphasis ours.)

Defendant's brief contains the following quotation: "An allowance for future damages must be reduced to its present worth", followed by these citations: "Missouri-Kansas-Texas Railroad Co. v. Edwards, 361 P.2d 459, 467 (Okl.1961); St. Louis-San Francisco Railway Co. v. Fox, 359 P.2d 710, 716, 83 A.L.R.2d 1318 (Okl.1961); Gallaspy v. Warner, 324 P.2d 848, 853 (Okl. 1958); 15 Am.Jur., Damages, § 24." None of the cited cases were FELA cases, though, in speaking of present value instructions, we said, by way of obiter dictum, in the Edwards case, that: "Such an instruction is necessary and proper where recovery is sought under the Federal Employers Liability Act, 45 U.S.C.A. § 51 et seq., * * *." We therein recognized, however, that in this jurisdiction, defendants who fail to request the instructions they desire on "allowable damages" are not in a position on appeal to complain of the trial court's failure to give them. We have specifically applied this rule to the subject of instructions on present value. See Empire Oil & Ref. Co. v. Fields, 188 Okl. 666, 112 P.2d 395, app. dism., 314 U.S. 572, 62 S.Ct. 79, 86 L.Ed. 463. In St. Louis-San Francisco Ry. Co. v. Tompkins, Okl., 409 P.2d 1, 4, we intimated that such a request was a necessary predicate for consideration of such an alleged error in FELA cases; and other courts have so held. See the cases referred to in the annotations at 154 A.L.R. 796, 805–807, both inclusive, and 77 A.L.R. 1439, 1459–1463, both inclusive, particularly Moran v. Atchison, Topeka & Santa Fe Ry. Co., 330 Mo. 278, 48 S.W.2d 881, cert. den., 287 U.S. 621, 63 S.Ct. 21, 77 L.Ed. 539, and Grimsley v. Atlantic Coast Line R. Co., 189 S.C. 251, 1 S.E.2d 157. We think the reasons given in the latter case for adhering to the rule are peculiarly applicable to this case. There, as here, the court instructed the jury that if they found for plaintiff they were to give him such damages *as would compensate him* for the injuries he had sustained, and the appellate court held

that the defendant, which did not request a more specific instruction limiting plaintiff's damages for loss of future earnings, to their present value, could not complain on appeal of the court's failure to give such an instruction. We are of a like opinion here. It will be noted that defendant's above quoted requested Instruction No. 4 comes no nearer mentioning the present value criterion than the court's Instruction No. 13. In view of the foregoing, we hold that defendant's arguments as to the trial court's alleged error in instructing the jury show no cause for reversal of the judgment here involved.

In the final, or "C", part of defendant's argument under its PROPOSITION No. II, its counsel contend that the verdict in this case "is so grossly excessive under the evidence * * * that it indicates passion and prejudice on the part of the jury." They seek to demonstrate this by representing that if the jury included any more than the agreed amount of $7,164.00 for plaintiff's loss of past earnings, such excess would lack sufficient evidentiary support. They emphasize, by repetition, the fact that plaintiff's payroll record (Exhibit No. 9, supra) shows he earned more, as a conductor, in 1963 than he had in any year since 1957; and they urge this as showing that his earning capacity has not been impaired. They attack Dr. M's testimony concerning the impairment of plaintiff's future earning capacity, as being too uncertain and limited in scope to support an award of approximately $22,000.00 for loss of future earnings. In their reply brief, defense counsel point out, among other things, that plaintiff had performed his regular tasks as conductor, at the time of the trial, for approximately 2½ years after the accident, without any discernible impairment in his earning capacity; and that he testified, at one place in his direct examination, that there was "very little difference" between the range of his foot's movement then, and its range of movement when he went back to work after the accident.

Defendant's argument ignores plaintiff's and his doctor's testimony concerning his past, present, and future pain and suffering, for which there is no fixed rule or standard of damage measurement. See Otis Elevator Co. v. Melott, Okl., 281 P.2d 408, syll. 6. Because of such evidence, we cannot assume that all of the $22,000.00 defense counsel speak of was awarded plaintiff exclusively for impaired earning capacity and loss of future earnings. See St. Louis-San Francisco Ry. Co. v. Tompkins, supra, 409 P.2d p. 5. As plaintiff's counsel points out, defendant's argument also ignores testimony to the effect that one reason plaintiff's earnings, after the accident, compared so favorably with his earnings before that, was that his rate of pay increased during that interim. Defendant's argument also ignores Dr. M's testimony that, on the basis of X-Ray findings the traumatic arthritis in plaintiff's right ankle joint had increased between his examination in February, 1964, and the last one in November of that year; that, in his opinion, this condition was progressive and would continue to increase; that there was then some stiffness in the ankle, and that this would increase until, within the next 6 or 8 years it would become almost completely stiff, or if not, it would have to be made so "by surgical procedure in order to relieve his pain * * *". This doctor testified further that "with each passing year" plaintiff would have less ability to do his present type of work " * * * and probably by the time he is 60 years of age, he will not be able to keep it up." Defense counsel try to make a point of the fact that, at one place, in his testimony, this witness stated it was his "feeling" (rather than his "opinion") that the ankle stiffness would progress; and they argue, on the basis of part of plaintiff's testimony, that his duties are not as strenuous as described in a hypothetical question with which plaintiff's counsel elicited the doctor's belief that plaintiff's condition would prevent him from doing those things in 6 or 8 years. We think this argument refers to trivialities rather than

matters of substance, and is without merit. We have carefully examined the entire record and particularly the evidence concerning the items of plaintiff's claimed damages. From this examination, we cannot say that the verdict in this case is so excessive as to demonstrate passion and prejudice in arriving at it. Plaintiff's medical evidence here is much more definite, positive, and convincing than that in either St. Louis-San Francisco Ry. Co. v. Tompkins, supra, or St. Louis-San Francisco Ry. Co. v. McBride, Okl., 376 P.2d 214, in which latter case we pointed out that (p. 219): "All the law requires, in the matter of showing the future effect of an injury, is 'reasonable certainty'." Furthermore, the jury had the advantage of being able to see the condition of plaintiff's foot and ankle. In this connection see Edwards v. Chandler, Okl., 308 P.2d 295, cited by plaintiff.

In accord with the foregoing, the judgment appealed from herein is hereby affirmed.

JACKSON, C. J., IRWIN, V. C. J., and DAVISON, WILLIAMS, BERRY, LAVENDER and McINERNEY, JJ., concur.

HODGES, J., concurs in result.